WESTERN UNION TELEGRAPH CO. v. McFARLANE.

(Court of Civil Appeals of Texas. Galveston. Nov. 15, 1913. Rehearing Denied Dec. 11, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 39*) — MESSAGES—NEGLIGENCE IN TRANSMISSION.

The substitution of "Dallas" for "Galveston," Tex., as the sender's address in a telegram, was negligence entitling the sender to damages if no answer was received because of such mistake.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 30, 34; Dec. Dig. § 39.*]

2. TELEGRAPHS AND TELEPHONES (§ 68*) — MESSAGES—DAMAGES—PROXIMATE CAUSE.

A mistake in substituting "Dallas" for "Galveston" as the sender's address, by reason of which no answer was received to a telegram wiring for money, and stating that the sender's wife had just died, was the proximate cause of mental anguish to the sender, resulting from inability to properly bury his wife because of lack of money.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

3. TELEGRAPHS AND TELEPHONES (§ 74*) — MESSAGES—ACTION FOR DAMAGES—INSTRUCTIONS.

In an action for damages for mental anguish, etc., caused by inability to properly bury plaintiff's wife through failure to receive an answer to a telegram wiring for money and stating that plaintiff's wife had just died, the court instructed that if plaintiff, when the message was handed in at the sending point, notified defendant that the addressee was indebted to plaintiff, and that plaintiff was without money and his wife had just died, and it was necessary for him to secure immediate funds for embalming his wife and funeral expenses, and further charged that if the sendee failed to send the money, and if the message had been transmitted correctly, the sendee would have sent sufficient money to enable "defendant" to embalm his wife and give her a more elaborate burial than he did, and that plaintiff would have embalmed his wife and buried her differently but for the mistake in the message and failure to receive money, and if the sendee would have sent the money in time to enable plaintiff to do so, and as a direct and natural result of the mistake plaintiff was prevented from having the body embalmed, etc., and was compelled to have her buried without embalming, and as a proximate result thereof plaintiff suffered mental anguish, the jury should find for plaintiff such sum over the actual damages as it might believe from the evidence would reasonably compensate him for such mental anguish. Held, that the instruction was not affirmatively erroneous or misleading.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

4. TELEGRAPHS AND TELEPHONES (§ 68*) — MESSAGES — DAMAGES — ANTICIPATION BY COMPANY.

Though a telegraph company was not told when a message was sent, requesting that money be wired immediately and stating that plaintiff's wife had just died, that plaintiff desired the money for embalming his wife, if it was informed that he was without funds and that the money was wanted for burial expenses, the company could have reasonably anticipated that its failure to properly transmit would probably cause plaintiff mental anguish from inability to properly embalm his wife on the nonreceipt of the money.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

5. TELEGRAPHS AND TELEPHONES (§ 71*) — MESSAGES — ACTION FOR DAMAGES — SUFFICIENCY OF EVIDENCE.

Evidence, in an action for damages for mental anguish, etc., through failure to deliver a telegram requesting money, held not to show that a verdict for plaintiff for $1,500 was excessive.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. § 71.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by J. E. McFarlane against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Hume & Hume, of Houston, and Geo. H. Fearons, of New York City, for appellant. Marsene Johnson, Elmo Johnson, and Roy Johnson, all of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant to recover damages alleged to have been caused by the negligence of appellant in transmitting a telegraphic message sent by appellee from Galveston to Walter Scott at Ft. Worth, Tex. The telegram was as follows: "Galveston, Texas, March 20, 1912. Walter Scott, Fort Worth, Texas. Please wire me money immediately. My wife has just died. Answer. J. E. McFarlane." The telegram was transmitted by appellant from Galveston to its Dallas office and repeated there to Ft. Worth. When it was repeated from Dallas, the word "Dallas" was inserted in lieu of

the word "Galveston," and the addressee, supposing that it had been originally sent from Dallas, and that appellee was at that place, tried to communicate with him there, and because of this error in the transmission of the message received no answer thereto.

The petition upon which the case was tried contains the following allegations:

"And plaintiff further alleges that the negligence of the defendant in failing in all said particulars to correctly transmit, telegraph, and deliver to said Walter Scott in said city of Ft. Worth the telegram delivered to defendant in the said city of Galveston, as aforesaid, was the proximate cause of the injuries and damages sustained by plaintiff as hereinafter fully pleaded, set out, and described. And plaintiff further alleges that, at the time of the delivery of said telegram to the defendant in said city of Galveston, the defendant was informed that the person to whom the said telegram was addressed was indebted to this plaintiff, that this plaintiff was without money, and that his wife had just died, and that it was necessary for this plaintiff to have and to secure immediately funds for the embalming and care of the body of his said wife and for the necessary funeral and burial expenses of said body; and that this was the reason why this plaintiff was sending this telegram. And plaintiff further alleges that the defendant then and there promised and agreed to safely and correctly and immediately transmit said telegram and cause the same to be delivered within one hour, all of which agreements and contracts were breached by this defendant as aforesaid. And plaintiff further alleges that he was, as the defendant well knew and was at said time informed by plaintiff, wholly without funds, and that his wife had suddenly died, and that he was unable to secure money necessary to have her body embalmed and cared for and to secure burial grounds and other necessaries for her funeral, all of which facts plaintiff informed defendant at the time of sending said telegram; that in the afternoon of said day he called at defendant's office and was by defendant's agents informed that said telegram had been traced, and that said telegram had been safely delivered to the person to whom it was addressed in said city of Ft. Worth, and that by reason of the failure of the defendant to correctly transmit and deliver said telegram the plaintiff was unable to secure funds with which to pay necessary embalmer's fees, to pay for burial fees, and to pay the other funeral expenses necessary for the burial of his wife until late in the morning of the second day after her death, when, and at which time, the plaintiff discovered that his wife's body was mortifying and decaying, and, not receiving any reply to his said telegram, the plaintiff borrowed a small sum of money wholly inadequate to properly and respectfully care for and bury his said wife and cause her body to be interred in an appropriate manner in his family burying ground in a distant county where plaintiff intended to have his wife's body shipped, of all of which last-named facts the defendant was informed at the time of the reception of plaintiff's telegram as aforesaid.

"And plaintiff further alleges that on the date of the death of his wife, as aforesaid, he was destitute and without money, as defendant was by said telegram and by plaintiff informed; that by reason of defendant's negligence in failing to correctly transmit and deliver said telegram to said Walter Scott, plaintiff suffered such mental agony and distress and such mental pain and anguish, for this, that plaintiff was unable on said day to secure funds to properly care for the body of his said dead wife and to prepare same for burial; that late in the afternoon of said day plaintiff suffered much mental agony, humiliation, and distress of mind, for this, he was forced by reason of defendant's negligence, as aforesaid, to solicit money from his friends and to borrow such sums as he could to protect and save his wife's body from being buried in charity, and to save same from burial in the pauper burying ground in said city. And plaintiff further alleges that while he made every possible effort to secure sufficient funds by loan from his friends and otherwise to give his wife a decent and respectable burial and funeral, as he would have been able to do if his said telegram to said Walter Scott had been properly transmitted and delivered by defendant, as said Walter Scott was indebted to plaintiff in the sum of $300 at said time and could and would have telegraphed all of said money to this plaintiff, and that, by reason of all of said negligence of the defendant, plaintiff was unable to have the body of his said wife embalmed, and was unable to secure a proper burial casket for her body, and was unable to obtain proper conveyances for his relatives and friends to and from the funeral of his said wife, and was unable to secure and obtain a decent burial place for the body of his said wife, all of which caused this plaintiff to suffer much shame, humiliation, and mental pain and anguish. And plaintiff further alleges that defendant's negligence in failing to carry out its contract with plaintiff and in failing to correctly transmit and deliver said telegram was the proximate cause of the injuries, damages, humiliation, and mental pain and anguish suffered and sustained by plaintiff at said time. And plaintiff further alleges that he has sustained actual damages by reason of the shame, humiliation, and mental pain and anguish suffered by plaintiff at said time in the sum of $2,999, and that he has lost the value of the said 45 cents paid to defendant for correctly transmitting said telegram, and that on account

of all of said matters, and by reason of the negligence of the defendant, as hereinbefore pleaded, he is entitled to recover of and from the defendant his said total damages in the total sum of $2,999.45."

The defendant answered by general demurrer to the petition as a whole, and by general exceptions to the allegations of damages caused by mental anguish, on the ground that said allegations were insufficient to entitle plaintiff to recover such damages, and that the only cause of action shown by the petition was for recovery of the 45 cents charges paid by plaintiff, which was a cause of action of which the court had no jurisdiction. The answer further denied generally all of the allegations of the petition.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $1,500.45.

The evidence shows that plaintiff's wife died in Galveston on the morning of March 20, 1912. Plaintiff was without funds with which to pay expenses necessary to prepare the body for burial and procure a coffin and lot in the cemetery, and, for the purpose of obtaining the money to bury his wife, sent the telegram before set out. At the time the message was sent the defendant was informed that plaintiff was without funds and was asked to hurry the message. The charges for transmission, 45 cents, were paid by plaintiff. The message was changed in the Dallas office, as before stated, and because of this change the addressee, Walter Scott, failed to respond to plaintiff's request. If the message had been properly transmitted, Mr. Scott would have at once wired plaintiff $140 which he owed him, and if plaintiff had so requested would have sent as much as $150. When plaintiff failed to receive any reply from his telegram, he made every effort to borrow money with which to provide for his wife's burial, and finally succeeded in obtaining $120. With this amount he bought a cheap coffin and a cheap lot in a cemetery and procured the services of an undertaker. His wife was buried on the evening of the 21st of March. Shortly after death the body began to decompose and before the burial could be had it became very offensive and was buried in a very decayed condition. This condition of his wife's body caused plaintiff to suffer much mental anguish and distress of mind. If he had received the $150 from Mr. Scott, he could and would have had the body embalmed shortly after death and would not have suffered the anguish and distress of mind caused by its condition. It is not shown that if plaintiff had received the money from Mr. Scott he would or could have borrowed the $120. The body could have been embalmed at a cost less than $30, the difference between the amount plaintiff was able to borrow and the amount he would have had if the telegram had been properly transmitted.

[1, 2] The failure of the defendant to properly transmit the telegram was negligence, and such negligence was the proximate cause of the anguish and distress of mind suffered by plaintiff.

[3] The first assignment of error complains of the following paragraph of the charge: "And that such negligence, if any, proximately caused plaintiff to suffer mental anguish in the respects alleged by plaintiff. And if you further believe from the evidence that the plaintiff or his agent, at the time such message was delivered to the defendant company at Galveston, Tex., notified such defendant that the person to whom said telegram was addressed was indebted to the plaintiff, and that plaintiff was without money, and that his wife had just died and it was necessary for plaintiff to have and secure immediate funds for the embalming and care of the body of his said wife, and for the necessary funeral and burial expenses of said body, and to secure necessary burial grounds, as more fully alleged by plaintiff, and if you further believe from the evidence that the sendee of such telegram failed to send money, and that had such message been transmitted correctly as sent the sendee of such message would have sent in response thereto sufficient money to have enabled defendant to have embalmed his wife and to have given his wife a more elaborate and different character of burial than that actually given her, and if you further believe from the evidence that plaintiff intended to and would have had the body of his wife embalmed and given his wife a more elaborate and different burial, but for such mistake in the message and failure to receive such money, and if you further believe that the sendee of such message would have sent such money, if any, in time to have admitted of plaintiff having his wife's body embalmed and giving his wife a more elaborate and different burial, and if you further believe from the evidence as a direct and natural result of the mistake in sending such telegram plaintiff was prevented from and it became impossible for him to have the said body embalmed, and giving his wife a more elaborate and different burial, and that he was compelled to have her buried without such embalming and a less elaborate and different burial than what he would otherwise have given her, and that as a proximate result thereof plaintiff suffered mental anguish, then you are instructed to further find for plaintiff such additional sum over and above 55 cents as you may believe from the evidence would reasonably compensate plaintiff for such mental anguish, if any; unless you so believe, you must find in favor of the defendant upon the issue of mental anguish."

We shall not undertake to discuss in detail the various objections to this charge presented in the 25 propositions submitted under this assignment. The charge is probably objectionable on some of the grounds

upon which it is assailed, but it contains no affirmative misstatements of the law applicable to the facts shown by the evidence and did not probably mislead or confuse the jury. The assignment is overruled.

Under appropriate assignments complaining of the refusal of the court to instruct the jury to return a verdict for the defendant on plaintiff's claim for damages for mental anguish and the action of the court in overruling defendant's motion for a new trial, the verdict for such damages is assailed on the ground that under the pleading and evidence in this case the negligence of the defendant in transmitting the telegram was not the proximate cause of such damages, and they are too remote to entitle plaintiff to recover therefor. The main contention under these assignments is made in the following proposition: "Mental anguish is not to be presumed as a matter of law to be a necessary consequence of mere failure to embalm remains, and failure to embalm is not to be presumed to be necessary to a decent and respectable burial as such, and where the allegation and proof shows that the embalming was contemplated and intended for specific purpose of burial elsewhere than at Galveston, and where the proof shows no notice of such purpose, and where the proof shows that plaintiff could have embalmed the body had he so chosen, and where the proof showed that failure to embalm in itself did not cause plaintiff mental anguish, and the embalming constituting a mere elaboration of funeral and burial at Galveston, and plaintiff not having been able with $140 to have had the remains embalmed and in addition thereto have held a more decent and respectable burial at Galveston than he did provide, and defendant having had no notice of mental anguish as a probable result of failure to embalm for burial at Galveston, the charge should have been given."

[4] We do not think the proposition should be sustained. It is true that appellant was not told when the telegram was sent that plaintiff desired the money for the express purpose of embalming his wife's body, but was informed that plaintiff was without funds and the money was wanted for the purpose of providing for the burial expenses of his wife who had just died. Proper preparation of the body was a necessary part of its decent burial, and the evidence shows that embalming was necessary to prevent the rapid decay of the body. That this is generally true in this climate is a matter of such common knowledge that we hardly think proof of the fact was necessary. The evidence shows that plaintiff could not procure the necessary funds to embalm the body, and that if the telegram had been properly transmitted he could and would have had it embalmed. We think under the pleadings and evidence the appellant at the time it

undertook to transmit the message could have reasonably anticipated that a failure on its part to properly transmit it would probably cause plaintiff to suffer the mental anguish for which he seeks recovery in this case, and, this being so, appellant's negligence in transmitting the telegram was the proximate cause of the damages to plaintiff by reason of his mental anguish and appellant should be held liable therefor. Telegraph Co. v. Carter, 2 Tex. Civ. App. 624, 21 S. W. 688; Cumberland Tel. & Tel. Co. v. Quigley, 129 Ky. 788, 112 S. W. 897, 19 L. R. A. (N. S.) 575.

[5] We cannot say under the evidence in this case that the verdict is excessive. The evidence as to the condition of the body is revolting, and the mental anguish of a husband who was compelled to keep and bury his wife's body in this condition must have been acute.

We are of opinion that the judgment should be affirmed, and it is so ordered.

Affirmed.